**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

KATIA I. FIGUEROA ACEVEDO,

Plaintiff,

v. Case No. 6:25-cv-1236-JRK

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

---

# OPINION AND ORDER[1]

## I. Status

Katia I. Figueroa Acevedo ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of postural tachycardia syndrome, hypertension, vertigo, gastroesophageal reflux, asthma, migraines, cognitive issues, and insomnia. Transcript of Administrative Proceedings (Doc. Nos. 12-13; collectively, "Tr." or "administrative transcript"), filed September 3, 2025, at 66, 77, 285. Plaintiff protectively filed an application for DIB on May 2, 2023, alleging a disability

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

onset date of July 1, 2022.[2] Tr. at 210-11. The application was denied initially, Tr. at 65, 66-75, 102-05, and upon reconsideration, Tr. at 76, 77-87, 113-15.[3]

On March 26, 2025, an Administrative Law Judge ("ALJ") held a hearing,[4] during which she took testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 44-64. On April 23, 2025, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 23-36.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council and submitted a brief authored by her lawyer. See Tr. at 17-18 (Appeals Council exhibit list and order), 198-99 (request for review), 402-04 (brief). On May 13, 2025, the Appeals Council denied Plaintiff's request for review, Tr. at 14-16, thereby making the ALJ's Decision the final decision of the Commissioner. On July 8, 2025, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

---

[2] Although actually completed on September 26, 2023, see Tr. at 210, the protective filing date for the DIB application is listed elsewhere in the administrative transcript as May 3, 2023, see, e.g., Tr. at 66, 77.

[3] The administrative transcript also contains documentation of Plaintiff having filed an application for supplemental security income on September 26, 2023. Tr. at 93, 200-09. That application was denied because Plaintiff exceeded the resource limit. Tr. at 93-99.

[4] The hearing was held via telephone with Plaintiff's consent. Tr. at 46, 167, 188.

On appeal, Plaintiff argues "[t]he ALJ erred by failing to account for the 'total limiting effects' of Plaintiff's well documented headache disorder; indeed, she only mentioned them three times in her [D]ecision, and even then only in passing, despite the ubiquitousness of this impairment throughout the record." Plaintiff's Brief – Social Security (Doc. No. 15; "Pl.'s Br."), filed October 3, 2025, at 1 (emphasis omitted); see id. at 4-16. On December 3, 2025, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's argument. Then, on December 17, 2025, Plaintiff's Reply Brief – Social Security (Doc. No. 20; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for further proceedings.

## II. The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a

[5] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step inquiry. See Tr. at 25-36. At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 1, 2022, the alleged onset date." Tr. at 25 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, disorder of the skeletal spine, neurocognitive disorder, anxiety, and depression." Tr. at 26 (emphasis and citation omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b). [Plaintiff] can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk up to 4 hours in an 8-hour workday; and sit up to 6 hours in an 8-hour workday. [Plaintiff] can occasionally climb ramps and stairs but never ropes, ladders, or scaffolds. [Plaintiff] must avoid concentrated exposure to extreme heat and even moderate exposure to hazards, such as heights and machinery, and fumes, odors, gases, and humidity. [Plaintiff] is limited to carrying out, understanding, remembering, focusing, and concentrating only on jobs where the tasks are simple.

Tr. at 29 (emphasis omitted).

At step four, the ALJ relied on the VE's hearing testimony and found that Plaintiff "is unable to perform any past relevant work" in "dat[a] processing services." Tr. at 34 (emphasis and citation omitted). The ALJ then proceeded to the fifth and final step of the sequential inquiry. Tr. at 35-36. After considering Plaintiff's age ("43 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the VE's testimony and found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 35, such as "Ticket Taker," "Ticket Seller," and "Information Clerk." Tr. at 35. The ALJ concluded Plaintiff "has not been under a disability . . . from July 1, 2022, through the date of th[e D]ecision." Tr. at 36 (emphasis and citation omitted).

## **III. Standard of Review**

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given

to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in "failing to account for the 'total limiting effects' of [her] well documented headache disorder." Pl.'s Br. at 1 (emphasis

omitted); see id. at 4-16; Reply at 1-4. According to Plaintiff, "[t]he ALJ was plainly obligated to consider [her] severe headache impairment according to the requirements of [Social Security Ruling ("SSR")] 19-4p, and she failed to properly do so." Pl.'s Br. at 14. Plaintiff also contends—briefly—that her headache condition should have "le[d] to a finding of disability by analogy to Listing 11.02." Id. at 15. Responding, Defendant asserts that "Plaintiff failed to establish that remand is required to reconsider her alleged headaches." Def.'s Mem. at 4 (emphasis and some capitalization omitted).

At step three, the burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

There is no Listing that applies directly to migraine headaches, but the Administration "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." Social

Security Ruling (SSR) 19-4p, 2019 WL 4169635, *7. Listing 11.02 (epilepsy) is the most analogous listed impairment. See id. SSR 19-4p explains, "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) . . . ." Id. Paragraph B of Listing 11.02 requires "dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. Dyscognitive seizures are characterized by alteration of consciousness without convulsions or loss of muscle control, and blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.00H1b. "To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, [the Administration] consider[s]: A detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its

treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).” SSR 19-4P, at *7.

Paragraph D of Listing 11.02 “requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.” SSR 19-4p, at *7; 20 C.F.R. pt. 404, subpt. P, app. 1, § 11.02. “To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in [Paragraph D, the Administration] consider[s] the same factors [it] consider[s] for [Paragraph B],” along with “whether the overall effects of the primary headache disorder on functioning results in marked limitation in: Physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.” SSR 19-4p, at *7.

If an individual’s “primary headache disorder, alone or in combination with another impairment(s), does not medically equal a listing at step three of the sequential evaluation process, [the Administration] assess[es] the person’s [RFC].” Id. at *7. In so doing, the Administration “consider[s] the extent to which the person’s impairment-related symptoms are consistent with the evidence in the record.” Id. at *8. “Consistency and supportability between

reported symptoms and objective medical evidence is key in assessing the RFC." Id.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)); see also Malak v. Comm'r of Soc. Sec., 131 F.4th 1280, 1287 (11th Cir. 2025). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.2d at 1223.

The Regulations provide that an ALJ "will" consider the following factors related to symptoms such as pain:

> (i) [The claimant's] daily activities; (ii) The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms; (v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms; (vi) Any measures [the claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms . . .; and (vii) Other factors concerning [the claimant's] functional

> limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3)(i)-(vii); see Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1277 (11th Cir. 2024). The factors must be considered "in relation to other evidence in the record and whether the claimant's statements conflict with other evidence." Raper, 89 F.4th at 1277 (citation omitted); see 20 C.F.R. § 404.1529(c)(4). To reject the claimant's assertions of subjective symptoms, "explicit and adequate reasons" must be articulated by the ALJ. Wilson, 284 F.3d at 1225; see also Malak, 131 F.4th at 1287; Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), and "is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities," SSR 96-8P, 1996 WL 374184 at *3. It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v.

Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Plaintiff reported early to the Administration that she suffers from migraine headaches "daily" that cause nausea, vomiting, blurred vision, light and noise sensitivity, dizziness, and fatigue. Tr. at 332. She also testified that she often missed work at her last job due to migraines and other impairments. Tr. at 49. At the time of the hearing, Plaintiff had recently resumed Botox injections for headaches but her headaches were still occurring daily. Tr. at 49. She indicated she always wears sunglasses and is "constantly in a dark room" because of photosensitivity. Tr. at 50.

The ALJ at step two did not recognize Plaintiff's migraines to be a severe impairment, and she did not discuss the migraines in any way at this step. Tr. at 26. At step three, the ALJ specifically considered various Listings but did not discuss Listing 11.02. Tr. at 26-29. Later, in determining Plaintiff's RFC, the ALJ did recognize Plaintiff "alleges disability due to pain everywhere from her head to her toes," including an allegation of "migraine headaches." Tr. at 29. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Tr. at 29, but that

Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record," Tr. at 30. In so finding, the ALJ discussed the medical evidence, making almost no reference to Plaintiff's headaches, symptoms, and treatments despite significant documentation of such in the administrative transcript. Nor did the ALJ consider or discuss SSR 19-4P.

Plaintiff's primary care records reflect a regular diagnosis of migraines, for which she has tried multiple medications. See Tr. at 908, 886-1012, 1069-1129, 1894-1961 (some duplicates); see also Tr. at 1580-1628 (consistent reports of headaches), 1761-1835 (migraines and medications). On February 21, 2023, Plaintiff reported that the migraines were "out of control" and was referred for Botox injections. Tr. at 908. Plaintiff's neurologist changed offices, and she initially had difficulty scheduling an appointment despite "still struggling." Tr. at 919, 929 (despite still struggling, indicating "Botox helps"). Even after Botox, Plaintiff continued to have migraines and had headaches "secondary to the brain injury" she sustained in a motor vehicle accident. Tr. at 941. By April 2, 2024, Plaintiff presented to her primary care physician with a "severe" migraine despite treating for them. Tr. at 955. On April 4, 2024, Plaintiff presented to the emergency room with various complaints, including headaches. Tr. at 1193, 1259.

Continuing into November 8, 2024, Plaintiff reported to her pain management physician severe headaches occurring "constantly," along with the corresponding symptoms and relieving factors, despite receiving Botox. Tr. at 1874-77. On December 12, 2024, Plaintiff again reported "daily" headaches that were "worse" and described aggravating and relieving factors. Tr. at 1883. Plaintiff received another Botox injection on that date. Tr. at 1889.

In sum, the record is replete with evidence of Plaintiff's migraine headaches, their frequency, aggravating and reliving factors, and treatment methods, almost none of which was considered or discussed by the ALJ. The ALJ's findings are flawed to such a degree that judicial review is frustrated and reversal with remand is required. The ALJ's discussion of the evidence does not assure the Court that Plaintiff's migraine headaches were adequately considered at any step in the sequential evaluation. The matter must be reversed and remanded for further consideration of the effects of Plaintiff's headaches at step two and at later steps in the sequential evaluation, ensuring explicit consideration of the matters set forth in SSR 19-4P.

## V. Conclusion

In light of the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final

decision and **REMANDING** this matter with the following instructions:

(A) Reconsider whether Plaintiff's migraine headaches are severe at step two and later steps, ensuring explicit consideration of the matters set forth in SSR 19-4P; and

(B) Take such other action as may be necessary to resolve this claim properly.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on September 15, 2026.

James R. Klindt
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies:
Counsel of Record